```
                UNITED STATES DISTRICT COURT                RECEIVED
                 DISTRICT OF SOUTH CAROLINA              GREENVILLE, SC
                GREENWOOD/ANDERSON DIVISION
                                                        2008 APR 10  A 11: 02
```

| | |
|---|---|
| United States of America,        ) | C/A No.: 8:07-CR-1472-2 |
|                                  ) | |
| v.                               ) | |
|                                  ) | ORDER |
| Jomorie Nelson,                  ) | |
|                                  ) | (Written Opinion) |
|               Defendant.         ) | |
|                                  ) | |

This matter comes before the Court on the defendant's motion for a judgment of acquittal pursuant to Federal Criminal Rule of Procedure 29(c), filed on February 28, 2008. For the reasons stated herein, this Court denies the defendant's motion.

## Factual Background

In December 2007, the defendant was charged with aiding and abetting Duane Michael Shoutlz in the armed robbery of the BB & T Bank in Belton, South Carolina. The defendant was named in a two count indictment for: (1) aiding and abetting an armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), & 2113(d); and (2) aiding and abetting the carrying or using of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2 & 924(c)(1)(a). Specifically, the defendant was indicted as the getaway driver. Though Shoutlz pled guilty, Nelson proceeded to trial.

At trial the government introduced three witnesses. First, Officer Looney of the Belton City Police testified that, on November 23, 2007, at around 11:00 AM, he responded to a report of an armed robbery in downtown Belton. (Tr. at 9.) Upon arrival at the scene, he began looking for someone in the area matching the description of the armed robber. (*Id.*) Looney's Sergeant subsequently informed Looney that the suspect may be in a green

Dodge Caravan traveling on Highway 247. (Tr. at 10) While patrolling Highway 247, Looney passed a green Dodge Caravan turning onto Highway 247, heading out of town. (Tr. at 33) He turned his squad car around and conducted a felony traffic stop. (Tr. at 11)

When Officer Looney approached the car, Nelson was in the driver's seat and Shoutlz in the front passenger's seat. After searching the car, officers discovered, the firearm used in the robbery, the mask used in the robbery, a sweatshirt or "hoodie" that matched the description of what the robber wore during the robbery, and over five thousand dollars in cash. Officer Looney testified that the money and mask were in a compartment below the front passenger seat, (Tr. at 13) and the gun was hidden underneath the same compartment. (Tr. at 17)

Following Officer Looney, the government questioned Dana Reece, a bank teller present during the robbery. (Tr. at 39) She testified in great detail about the actual robbery. Considering Schoutlz had already pled guilty to the actual robbery, with consent of both parties, the Court instructed the jury that:

> We'll proceed now with the cross-examination of this witness by [defense counsel], but before that I want to tell you that you should understand that there is no dispute, there's no dispute that on or about November 23, year 2007, the BB&T Bank at 123 O'Neal Street, Belton, South Carolina was robbed at gunpoint by an individual named Duane Michael Schoultz.

(Tr. at 63) On cross, Reece admitted that she had never seen Nelson (Tr. at 63 - 64) and that, while robbing the bank, Schoutlz did not appear to communicate with an accomplice. (Tr. at 64)

Finally, the Government called Jimmy Pepper. Pepper was in the bank during the robbery and attempted to follow Schoutlz out of the bank. (Tr. at 71) Pepper testified that

when he emerged from the bank, he began to run down the alley that the robber had fled down. (Tr. at 72) While Pepper was running down the alley—expecting to find the robber also running away— he noticed the roof of a green minivan moving away from him and from behind a tall wooden fence which was perpendicular to the alley. (Tr. at 77) As Pepper caught up to green Dodge Caravan, he testified that he could see only one person, the driver, in the van. (Tr. at 73) When the driver noticed Pepper chasing the van, the van accelerated quickly. (Tr. at 74)

When Pepper made it to the main street off of the alley, Pepper asked a passerby if he had seen anyone run by. (Tr. at 72) When the passerby responded "no," Pepper realized that the robber was likely in the green Dodge Caravan. (*Id.*) He notified the police about the vehicle and, according to Pepper, they found the van "a few minutes later." (*Id.*)

After Pepper's testimony, the government rested its case and Nelson moved for a judgment of acquittal. The Court granted a judgment of acquittal to the defendant for the § 924(c)(1)(a) violation. After a lunch recess, the defendant rested his case without presenting any evidence. Upon the defendant's motion, the Court granted a judgment of acquittal on the firearm enhancement under § 2213(d). When the case went to the jury, it was only deciding whether Nelson was guilty or not guilty of aiding and abetting Schoutlz in robbing the BB & T in Belton in violation § 2213(a). The jury could not return a verdict. Therefore, the Court declared a mistrial. The immediate motion followed.

## Discussion

The defendant argues that, pursuant to Federal Rule of Criminal Procedure 29, he is entitled to a judgment of acquittal because the government failed to present sufficient

evidence at trial to sustain a violation of §§ 2 & 2113(a). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). This Court must give the government "the benefit of all reasonable inferences form the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

To convict a defendant of aiding and abetting in a bank robbery, the government must show that the defendant "participated at some stage of the illegal venture with knowledge of the result and the intent to bring about that result." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007) (citing *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir.1983)). "The escape phase of a crime is not . . . an event occurring 'after the robbery.' It is part of the robbery. One who participates in and assists in the escape of the parties who were in the bank aids and abets the bank robbery . . ." *United States v. McCaskill*, 676 F.2d 995, 1000 (4th Cir. 1982)(quoting *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1971)). Proof that the defendant was present and had knowledge of the crime is insufficient without a showing that the defendant voluntarily did some act in furtherance of the crime. *United States v. Love*, 767 F.2d 1052, 1058 (4th Cir. 1985); *see also United States v. Reynolds*, 178 Fed.Appx. 281, 285, 2006 WL 1194314, *3 (4th Cir. 2006)(unpublished).

Specifically, the government must show four things: (1) the bank robbery was in fact committed by someone other than the defendant; (2) Nelson knew that the bank robbery

was to be committed or was being committed; (3) Nelson knowingly and voluntarily did some act for the purpose of aiding, commanding, or encouraging the bank robbery; and (4) Nelson acted with the intent that the bank be robbed. *United States v. Thomas*, 59 Fed.Appx 952, 957 (4th Cir. 2003). The defendant does not dispute that the bank robbery was in fact committed by Schoutlz. (Tr. at 60-63) Rather, Defendant argues that, at trial, the government did not demonstrate any evidence that the defendant (1) knew about the bank robbery, (2) intended it to occur, or (3) acted to further the crime. The defendant argues that the government's case only reveals that the defendant was present in the minivan after the robbery, facts insufficient to sustain a conviction for aiding and abetting.

This Court finds that the record contains sufficient circumstantial evidence that, when viewed in the light most favorable to the government, precludes a judgment of acquittal. First, there is evidence that a green Dodge Caravan was at the scene of the robbery, parked in a spot hidden from the bank behind a tall wooden fence during the robbery. There is also evidence that a green Dodge Caravan was pulled over soon thereafter containing Nelson, Shoutlz, and the money, mask, and gun from the robbery. In the light most favorable to the government, a reasonable juror could believe that since Nelson was driving the Dodge Caravan when it was pulled over, he also drove it away from the bank.

Though there is evidence that only one person was in the green Dodge Caravan when it left the bank, it is reasonable to believe that Schoutlz, the actual robber, was hiding in the van rather than sitting upright in the front passenger seat. Considering the officers found the robber's sweatshirt in the back of the van, it is reasonable to infer that Schoutlz climbed in the side of the van, laid on the floorboards to avoid detection, took off his

sweatshirt, and then climbed into the front passenger seat.

Given the reasonable inference that Nelson drove the minivan away from the bank, all of the elements are clearly present. First, there is evidence that Nelson, as driver, *knew* that the bank was being or to be robbed because he parked behind a tall wooden fence, hidden from the bank. Aerial photographs introduced in evidence make it clear that there was other parking closer to the bank, but the driver chose to hide his car from the view of the bank. It can be reasonably inferred that Nelson parked the car in a partially hidden spot because he knew Schoultz was going to rob the BB&T. Second, driving Schoutlz away from the bank is an *act*, beyond mere presence, that aided Schoutlz in the commission the crime. Finally, driving the van to the bank, parking in a hidden location, and driving the robber away from the bank evince an *intent* for the bank to be robbed. Therefore, the government put up sufficient evidence to preclude an entry of a judgment of acquittal.

## Conclusion

Though the jury did not return a verdict, the government put up sufficient evidence to preclude the entry of a judgment of acquittal. In the light most favorable to the government, circumstantial evidence that the defendant drove the getaway van along with the direct evidence about the van's location, actions, and contents, before, during, and after the uncontested bank robbery, constitute sufficient evidence. Therefore, the defendant's motion is DENIED.

IT IS THEREFORE SO ORDERED THAT the defendant's motion for a judgment of acquittal be DENIED.

IT IS SO ORDERED.

*William W. Wilkins*

The Honorable William W. Wilkins
Sitting by Designation

April /0, 2008
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Defendant has the right to appeal this Order within ten (10) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**